## No. 12,978.

## Lazarus Levy vs. Sam Levy, Et Als.

### Syllabus.

1. The parties in interest could, if they chose, make as basis for settling their rights an amount other than the amount showing total assets of the community per official inventory.
2. All the facts regarding the items which constituted the amount taken as a basis for settlement and all the facts regarding the sales made in order to effect a partition, not being in evidence, the Supreme Court will not assume that a double charge was made in the settlement to the prejudice of plain. tiff's interest.
3. In a matter of fact as related to an item of $4433, with which plaintiff was charged, the preponderance of the testimony was against him. In collations by taking less, the donee must take so much less from the surplus of the succession. C. C. 1253.

ON APPEAL from the Seventeenth Judicial District Court for the parish of Lafayette. *Chas. D. Caffery, J.,* ad hoc.

*Crow Girard* and *Wm. Campbell* for Plaintiff and Appellant.

*Gus A. Breaux* for Defendant, Appellee.

Argued and submitted December 23, 1898.
Opinion handed down January 9, 1899.
Judgment modified and rehearing refused February 6, 1899.

The opinion of the court was delivered by
Breaux, J. This suit was brought by plaintiff to have decreed null on the ground of fraud, an extra judicial partition effected between him and his children, and to set aside acts of transfer based upon the act of settlement.

Plaintiff's wife died in May, 1894. The inventory shows the property there was in community, and its estimated value.

Plaintiff was a merchant and one of his sons was his bookkeeper for many years.

The heirs greatly disagreed with their father about the amount coming to them from their mother's estate. It was the cause of constant quarrels, as we gather from the testimony. After a time, Sam Levy, the bookkeeper before alluded to, made a memorandum of amounts he thought were coming to each heir. They (the heirs) were eight in number. He submitted the memorandum to each of the heirs of age, six in number, and to plaintiff, the father, who represented his two minor children, in addition to his own interest as survivor in community.

The memorandum was placed in the hands of their counsel and he was directed to draw up an act of settlement with the memorandum as the basis.

The paper was written by him (the counsel); it was explained to all concerned, read to them, and duly signed by plaintiff and his children. Plaintiff now avers that he has been imposed upon by his children, who, he says, received more than they had any right to expect.

He charges that the heirs of age, who were defendants, were thoroughly conversant with his business and availed themselves of their knowledge of his affairs, to prepare and place in the hands of their attorney, erroneous and incorrect statements, showing larger indebtedness than he actually owed to the community.

He complains that they withheld from the settlement made and so managed that the full amount of the inventory was not taken account of; that in the settlement they charged him with four thousand and thirty-three and 80-100 dollars, which (he avers) he did not owe to the community.

He further complains of the charge made against the community of thirteen thousand and seventy dollars, its indebtedness as shown in the settlement; and lastly, he contends that the following amounts should have been collated by the heirs named:

Armand Levy ...............................$2600 00
Samuel Levy ...............................$2500 00
Hannan Levy ...............................$1500 00

The defendants in their answer admit that they and plaintiff entered into an agreement for the settlement of the rights of the heirs in the community existing until lately, between plaintiff and Frances Plonskey, his late wife.

They aver that it was a fair and just settlement, and that their

father had no cause to complain. That the settlements furnished to their attorney were taken mainly from plaintiff's books with which he was familiar.

They deny that they circumvented their father in any way, or that they committed any fraud.

The judge of the District Court rendered judgment for defendants and rejected plaintiff's demand. He prosecutes this appeal.

We are informed that the defendants positively refused to take the official inventory as a basis for the settlement.

They insisted upon a different amount and would not accept any other amount than that which they asserted it should be. The plaintiff, after a considerable time, and many talks with his children, yielded and accepted, as correct, the sum of seventeen thousand two hundred and forty dollars instead of the total of the official inventory. This was a matter of agreement and one which plaintiff could well make, and by which, in our view, he is surely bound. He evidently knew the amount at which the property had been appraised in making the official inventory. It was for him to insist upon the amount stated in the official inventory.

There is no reason why this agreement made by him with his children should not be binding. As we take it, it was a question of value of property and all parties concerned arrived at the conclusion that it was not worth the amount at which it had been valued. An agreement which must be held as legitimate, and binding upon all heirs who are *sui juris,* unless there was error committed or fraud practiced in some way. We have found neither fraud nor error.

We take up next in order, the item of *four thousand and thirty-three* and 80-100 dollars, amount charged to plaintiff in the settlement now attacked by him. One of the objections is that he, plaintiff, is charged with the sum just mentioned as having been collected by him after his wife's death, and no credit was allowed for the value of outstanding accounts.

We have not succeeded in finding that the plaintiff has any reason to complain, particularly, in view of the fact that he has consented to a settlement without raising any objection (in so far as the record discloses) on that account. Prior to the settlement certain described properties had been retroceded to plaintiff, on which plaintiff now claims he, as head of the community, lost, amounts which should be deducted from the item last stated. He must have known that the

loss had been made. Why did he consent to the settlement without taking it into account? Moreover he is concluded by the settlement as made by him.

He agreed upon an amount with his children to be taken as the value of the whole assets of the community. Unless each item was before us making up that amount (taken in lieu of the amount of the official inventory) and the value placed upon it, we could not well determine that an error has been made as to one of the items which resulted in an over-charge of the plaintiff in the sum of three thousand dollars claimed.

Plaintiff also claims as to the amount last stated, on the ground that no deduction was made from lot two of the inventory for the four thousand and nine hundred dollars appraised value of the outstanding accounts and notes due the store. Plaintiff now takes the position that three thousand dollars were worthless and that to that extent there is a double charge.

It appears of record that thirty *per cent.* was deducted from this item of the inventory; it was seven thousand dollars, but by agreement it was reduced to forty-nine hundred dollars as just stated, *i. e.* thirty *per cent.* less of seven thousand dollars.

The father admitted that he collected four thousand four hundred and thirty-three 86-100 dollars of this item. The testimony does not reveal the error charged.

This brings us to the item of thirteen thousand two hundred and seventy 55-100 dollars debts deducted from the final total of the active mass of the community of which plaintiff also complains. The testimony of plaintiff as to part of this item, viz: seven thousand, three hundred and thirty-four 85-100 dollars, given to sustain his objections, is not very plain. We gather from other testimony that plaintiff acknowledged an indebtedness of two thousand dollars with which he was charged, and the correctness of other items of indebtedness amounting with the two thousand dollars to seven thousand three hundred and thirty-four 85-100 dollars. The remainder of the thirteen thousand, two hundred and seven 55-100 dollars, to-wit, five thousand nine hundred and thirty-five 70-100, is made up of five hundred and sixty dollars due to one of the heirs, and three hundred and seventy-six dollars due to another of the heirs, and five thousand dollars claimed to have been collected by five of the heirs who had not previously received anything from the master of community.

Our summary, as just made, is based principally upon the following testimony (of the learned counsel for the plaintiff) transcribed from the record:

"The balance of the debts of $13,270.55 arose in this way: Mr. Levy had donated to three of his children certain amounts of money: to Sam Levy, Armand Levy and Mrs. Mossiker, which after discussion among the heirs was fixed at $1000.00 each. I then, by consent of all parties, allowed $1000.00 to each of the other heirs. After this was added up, Sam Levy contended that the estate owed him $560, and Victor claimed that his father was owing him $375. * * * These two amounts were allowed, which made the debts amount to $13,270.55. After that we ascertained the distributive share of each heir, which was $523.20."

By consent, the amount received by three of the heirs was properly fixed, and, as we think, at one thousand dollars each. That is the amount each owed. Plaintiff complains of all the items of indebtedness going to make up the amount last stated. Some of the defendants have testified, as witnesses, that they have settled their indebtedness by legal collation.

We have found it out of the question to reach that conclusion under the law. Three of the heirs owed collation. If this was intended as a donation by taking less, as we think it was, the donee then, must take "so much less from the surplus of the succession." C. C. 1250.

In our judgment this should result in the following as correct:

ACTIVE MASS.

1. Amount of the inventory in acordance with agreement. .$17,240 00
2. Accounts collected by L. Levy...................... .$ 4,433 80
3. Amount due by three of the heirs................... .$ 3,000 00

$24,673 80

Debts ........................................... .$ 8,270 55

$16,403 25

One-half for plaintiff...................... .$8,201 62
One-half for defendants ................... .$8,201 62—$16,403 25·

As relates to the sales and acts plaintiff seeks to have annulled,

numbered 21,148, 21,149, 21,150, 21,151, 21,152, there is no necessity to annul them at this time. Balances which may be due when settlement will have been made on the basis here expressed may be satisfied without the necessity of a sale. The question of necessity of sale *vel non* will be remanded for trial before the District Court.

Therefore the judgment appealed from rejecting plaintiff's demand, in so far as relates to acts before enumerated, is annulled, avoided and reversed, and instead, plaintiff's demand is remanded for trial as stated in the body of our opinion.

For reasons assigned, it is ordered, adjudged and decreed that the case be remanded to the District Court to be proceeded with in accordance with the views before expressed. The costs of appeal to be paid by appellee.

## ON APPLICATION FOR REHEARING.

WATKINS, J. We modify our decree and remand the case to ascertain whether or not collation is due, and should be made at all. Under the circumstances we think that upon the question of collation *vel non*, the case should be tried.

We reserve to plaintiff all his rights, and to the defendants theirs, so that they may be considered entirely from point of view of the rights of each, the plaintiff on the one hand, the defendants on the other, as relates only to collation *vel non*. With the foregoing modification of the decree, the rehearing applied for is refused.